Court, please call the next case. 1092546 Metropolitan Water Reclamation District Good morning, Your Honors. May it please the Court, Mr. Noble. My name is Michael Schneider. I represent the appellate, Ruth Lindquist. The Commission had this case correctly. Its analysis, I think, addresses some of the problems you've been forced to deal with as the bar comes before you, argument after argument, requiring, and I think to some extent torturing, the notions of when a demonstration of increased risk is required. Ms. Lindquist, in a sentence or two, works for the Metropolitan Water District. They're just off of Michigan Avenue, for those of you who know your Chicago geography. Part of her job is, two or three times a week, she gathers up the petty cash and the small checks and marches them over to the bank one block south and one block east on Michigan Avenue. On this particular day, as is her habit, she's crossing the street to go to the other side from where the district is, and she's heading east to Michigan Avenue. The side entrance of Crate and Barrel exists there, and there's like a garage door for the Crate and Barrel crate material to come in. The sidewalk goes like this, and there's pictures attached to the appendix. Regular sidewalk, and then it comes down in a dip, like a slope, so that trucks don't have to bump up and come over a curb. Pretty obvious hazard, there's even a sign there. And this lady stumbles and falls in this sloped downward driveway, instantaneously putting her hands out, and fractures both wrists. We contended at arbitration that these activities that occasioned that accident were incidental to her employment. We maintained that so long as there was this nexus between the activities and her injury, that this clearly satisfied a rising out of her employment. Counsel, let me, could you hone in on one factor? Was there anything about this driveway itself that may have been a contributing factor? I know the claimant testified that there was no defect perceived in the curb of the driveway, but was there any type of topography? Was there anything besides she just, you know, stumbled going up the driveway? Oh, yeah. Well, no defect. No one on our side of the case is suggesting there was a crack in the sidewalk. But the nature of how it's built and the warning sign, I think, speaks volumes that we're not talking about a straight sidewalk, as I'm thinking you're grasping. So there's a dip in this thing? It's a huge dip. And it goes like this, Judge. And then so that you can get down to street level so the trucks can drive in, they take the sidewalk for about a length of, oh, maybe 12 feet. The sidewalk suddenly goes down like this, just like that. And there's pictures of it, and I doubt she would be the first person that would misstep and stumble into that dip. So if that addresses your question, we've maintained this is incidental to the employment and clearly compensable. The respondent wants to push the category of this case over to neutral risk, and therefore require the petitioner to show that there's an increased risk. To be honest with you, I'm not sure if the respondent is saying even when activities are incidental to the employment, you must also show increased risk or you only must show increased risk when it's a neutral risk. I would maintain, as the commission did, that we would win under any set of circumstances when you take the facts and the permissible inferences and apply them to our law. Number one, we win certainly if she simply needs to show that this was a risk incidental to the employment. She's traversing something, and unlike Caterpillar where that man was not able to show there was any problem whatsoever with the curb, he just stepped down from the curb, we have a signed warning danger type situation that says, be careful here because the sidewalk's going to somewhat disappear from underneath you. Secondarily, if indeed we were called upon to show an increased risk, the law in a sense provides us with two trump cards. Number one is the case of Institute of Technical Research, because the arbitrator, you could tell he was agonizing over turning the case down, and the commission reversed in our favor. He said, I recognize what the Petitioner's saying. He's saying if the same accident happened on the employer's own loading dock and she tripped into this slope, clearly that would be compensable. So he's struggling with how can it be compensable if she's under the roof of her employer, but not compensable if she has the same danger out on the street. He concluded that he was constrained by Caterpillar to deny the claim, and the commission said he was off base. The point being, if I did need an increased risk, Your Honors, we would in fact look at Institute of Technical Research, because we're not comparing her to everyone else that walks along that same sidewalk. That, in Institute of Technical Research, told us would be absurd. We compare her to people that walk sidewalks in general. And sidewalks in general don't have this kind of dip. You're not faced on every block with having to keep your head down to make sure the sidewalk isn't disappearing out from underneath you. Let me just throw this into the mix. And obviously, I could see you were listening with interest to the earlier case, because some of the issues overlap about whether or not the claimant's exposed to a greater risk. The argument in the other case is the person's merely turning. Even though it's a part of the job, they're turning. Did the claimant in this case, was she required to take a specific route? Was she required to go past this warning? Simple, Judge. There was really about only two logical routes you could take, and she took the most logical one. She could have gone out the front of the door, up the street to the west a little bit, because the respondent isn't exactly on a corner, gone one block south first, and then east. In this instance, she goes east first, because it's actually a little shorter, and then south. There was only two ways you could go, and she took the most logical one. If she went the first route, would she have avoided this dip? If she went the first route, she would have avoided the dip, yes. But I don't see how that would control the incident. I'm not saying it's controlling. I'm just curious. Yeah. No, no. If she went the other way, she would have avoided the dip. I don't know if she would have encountered any other hazard. But then not only do we have Institute of Technical Research, and then I somewhat tongue-in-cheek in my briefs cited Larson, which made the whole point. She doesn't have to have a greater increase of risk, if you think she needs a risk, than the other people that traverse this sidewalk. Only the general public. And Larson essentially says, that would be no different than a respondent arguing that anybody that goes into the lion's cage has the same amount of risk as the lion tamer. Well, obviously that's true, because we're not comparing you to going into the singular cage, which in this instance would be the sidewalk. We're talking about sidewalks in general. Now, I mentioned two trump cards. The first one being this Institute of Technical Research clearly shows if I need a risk, and I don't think I do, and I'm hoping a decision from this Court will help clarify things for the bar. But if I do need one, and Institute of Technical Research was not enough standing alone, then we have the whole notion of this lady being a street employee. And street employee cases do not require the employee to be on the street for all 40 hours. It simply says when you send somebody out on the street, the risks of the street become the risks of the employment. And so ultimately, that would be the final trump card. If I can't win this case simply on the activities being incidental to the employment, which is my preferred urging to you, then I should certainly win it under increased risk under the doctrine of Institute of Technical Research. And if somehow you didn't want to hang your holding on that, then certainly the entire street employee doctrine, as fostered in the holdings of the City of Chicago case cited in my brief, would make the case simple. So when I said initially the commission got it correct, I'm not sure where the respondent is wanting to push the state of the law as we take these disputed facts and apply them to the law. It just seems illogical to me. No more illogical than if any of you were leaving here today, and you'll forgive me, but it's the same some kind of injury on the street. Counsel, one final point on that. Is there a certain amount of time that the evidence must establish that the claimant is on the street to fall within the street doctrine? No. And I cite it in my brief. She goes out two or three times a week. My suspicion would be that the errand takes no more than a half an hour. So that would be one and a half hours out of a day. But the same case says, you know, these are matters of degree, not matters of compensability. And I think that would be in the holding, Your Honor. One of the other cases, interestingly, says if they had hired a messenger or hired a private messenger service to do the same thing they had her do, then it would seem there would be no question that it was compensable. What I think has happened here is we have a notion of you must demonstrate a risk greater than the general public. And the respondent has seized upon the word public and has confused this case simply because her own employer sends her into the public way, and therefore they say, well, now that you're out in the public way, you have to show a greater risk than the public. But we're confusing legal and factual notions. And we come full circle. Just as the arbitrator said before he begrudgingly denied the claim, the same injury happens at work. It's compensable. How can you justify if this is incidental to employment, the employer sends her out there, there's a street risk that it's not compensable, let alone why should she have to show she needs to be exposed to that risk greater than the general public? I think if you disagree with me and you believe she does have to show an increased risk, she has clearly shown it under either of those doctrines enunciated in the case law, Institute of Technical Research or City of Chicago. But I think such a holding is only going to embolden the respondent bar more. And as I said in my case, it's not any different. I have a secretary that works all year long. Once a year a 25-pound box of stationery comes in and she decides to be a good egg and lift it and pops her back. Why not then shouldn't a respondent say, well, all of us lift boxes from time to time. Where's your increased risk, Ms. Secretary? We all do some lifting. I know that's an absurd example, but we are getting to the point in practice before the commission where we're getting plagued with these notions of increased risk and when you have to show it and what is a neutral risk and not. Lastly, I mean, if you'll recall the pew that I think the respondent is trying to put us in, neutral risks, even though I think we win there, as I said to you, those will always, those somewhat oddball cases that were mentioned here earlier today where a man swivels in a chair or he's hanging up his coat or in some instances, although not all, when he's stooping over and intuitively the court says, what's the connection here between, other than if you're a hat check person, hanging up your coat and your employment? And I can understand those reservations. But when the employer sends you out on the street to do an errand and you fall in a driveway that's signed and warned and you break both wrists, I think it's reasonable to expect that there's a connection between that and your employment that warrants the payment of your medical bills and your lost time and money for the permanent effects of the injury. And with that, I'll sit down. Thank you. Counsel, please. Thank you, Justices. Dennis Noble representing the Epelon Metropolitan Water Reclamation District. Mr. Schneider. What the employee is trying to do in this case is basically change the law. If you're out on the street and there's no dispute, we've never disputed that she was in the course of her employment, but once she's running that errand, she still has the burden of proving that the accident arose out of employment. And in this case, because she is out in the public, she has to prove a risk greater than the general public. That's been the law. It has been the law. It hasn't changed. Rather than argue that the law should change, she's now convoluting this whole case to make it sound like it's some hybrid between a de novo jurisdiction on whether or not it applies to the law versus a manifest weight argument. Now, in his reply brief, he says, wait a minute. The jurisdiction in this court is manifest weight. All right? If that's his position, then the manifest weight of the evidence shows she had no idea what happened. She either stumbled or misstepped. She lost her balance. Unfortunately, she fell down and sustained accidental injuries resulting in risk fractures. Let's assume that that's correct, that she was unable to delineate specifically what caused this fall. The commission found that she was exposed to the risk of the dip in the driveway with a greater frequency than the members of the general public. How do you respond to that argument? What evidence is there that the general public wasn't exposed to the same dip? I don't understand the logic in the commission. It's not only qualitative. It's quantitative. She's exposed to that risk because of her employment. The general public doesn't have to go there. She's got two routes to go. She chooses one. The dip is there, and she falls. She's exposed to the risk to a greater degree than the general public because she's working. It's the street risk doctrine. Yeah, but she chose the place. And the street risk doctrine, if I'm wrong, correct me, we have to put her in the place where she fell. Did we put her there? Was she working there? No, because all you have to do is tell her to go out on the street. Well, if we put her on the street, she still has to prove an increased risk. No, so what she has to do is that she's on the street. Oh, we don't have to prove that. Excuse me. Pardon me. You don't have to prove anything. She's got to prove it. Thank you. What she's got to establish is that her job required that she be on the street, and then all the risks of the street arise out of her employment. That's the street risk doctrine. Well, in your learned words in the case that Holmerding cited by the commission, I believe you spelled out the exact argument I'm making now. I don't have to be redundant about it. You wrote in that decision that there, as counsel alluded to, there's three different categories. It's a neutral risk. It's a neutral risk. Then you wrote the mere fact that the claimant does do duties to her to the place of, excuse me, the mere fact that the claimant's duties took her to the place of injury and that, but for her employment, she would not have been there, is not sufficient of itself to support a finding that her injuries arose out of her employment, citing Illinois Bell. Well, look, if the sidewalk were flat and she just said, I tripped over my feet as I was walking down the sidewalk, you'd have Holmerding. She said there was a dip in the sidewalk and that she fell as she was going up the dip. Well, she was cutting jaywalking, more or less, across the area. It's not a false system. I understand that. But she chose the route. We didn't tell her that route to take. So when she says she went up the dip, it's characterized as a dip. It's a driveway. It's a driveway. If you look at the photographs attached to numerous briefs by counsel, look at the photograph of the area where she fell. She testified it was a six-inch dip. Well, she said the curb was six inches high. I don't think she's qualified enough as a mechanical engineer or otherwise to say how much the dip was. All she said as she was walking up the drive, she stumbled. She marked it with an X where she fell. I don't see how this is an increased risk anywhere. The mere fact that she was walking to the bank to make the deposit, that puts her in the course of her employment. She still has the burden, as the arbitrator said, as the circuit court judge Holmer said, she still has to prove that second element. Now, if we're arguing manifest weight, that that is now the standard of what she's arguing, well, doesn't there have to be evidence above and beyond the manifest weight standard for him to win? Doesn't he have to prove with credible evidence that that was an increased risk? Not just his opinion. Doesn't he have to show like that? Excuse me. I'm sorry. The commission, you'd only believe it. And the commission did believe it. Well, the commission threw that in at the end, didn't they? Excuse me. This is the manifest. The question is, was the commission's decision against the manifest weight of the evidence? That's not to say the commission couldn't have decided it any other way. The question becomes, is there evidence in the record to support the commission's decision? She says she falls on a dip in a driveway that intersects with a public sidewalk approximately six inches. And she's been sent out on the street by her employer. Now the question becomes, is that sufficient evidence to support the commission's decision? If the answer to that is yes, this case gets reversed. If the answer to that is no, it gets affirmed. Just that easy. It's a very simple case. It is a very simple case. But that's to the direct examination, the cross, what Justice pointed out earlier, the cross examination I had of her where she said, I asked her, what caused you to fall? I don't know. I stumbled. I tripped. I don't think she said I tripped on my feet. I stumbled. I fell forward. So how did that pavement cause her fall? That's what's missing. That's what you say in the direct. Isn't that missing? What did she say in the direct? You tell me. She said she stumbled and fell on a dip. Stumbled and fell on a dip. What did she say on the cross? Which one do you take? Which weight do you give? That's for the commission to decide, not us. I may have decided it based on the cross. They decided it based on the direct. That's their prerogative. It's a factual issue. Well, I think what takes it out of his argument and puts it more so in mine is the fact that we didn't direct her which route to take. Like the case that he cites, City of Chicago, that was at a job site more or less where there was a defect in the sidewalk. There isn't any dispute, is there, that the route she took was a direct route to the bank? I mean, it's not like she walked 10 blocks out of her way. You know, that's an interesting argument, and technically I don't know how to answer that because that's a subjective standard that she applies.  I mean, she could have gone on an angle to the southeast, to the corner of Michigan and Erie. The entrance to the district is behind that to the northwest. So she took that angle. She could have gone straight across the street and avoided it. She could have turned left out of the building and walked down a half a block to Michigan and crossed at the light. So I don't know the answer to that. Only she would know. Okay, let me rephrase. This was not an unreasonable route for her to take. I guess not. I mean, I'm not talking as the crow flies or anything, but I'm just saying she didn't deviate way out of a normal route to go to the bank. There's no deviation shown. Never heard. Deviation. We're in the city of Chicago where there's crosswalks. We're in the city of Chicago here where there's crosswalks, right? Correct. If you took any of the crosswalks, would you encounter this? Or am I getting the impression that she crossed the middle of a block? She crossed the middle of a block. What? It's a no-fault system. I know. The point is, is that they're protected safety areas that you cross the street. Well, I think what's missing here, too, is, I mean, are we saying that, Justice, as you point out, is this an inherently dangerous area where it happened? I don't see the danger. It doesn't have to be inherently dangerous. But doesn't she still have to be? If the commission accepts the fact that the dip is a risk, even if it is a neutral risk, she still gets to recover because the district sent her out there. They put her on the street. That's the street risk doctrine. But isn't the street risk you still have to prove the defect? No, no, no. That's what I read. You have to prove the risk. The risk is the dip. Now, what you call a defect, what I call a defect, and what the commission determines is a risk, probably are different things. She stumbled on it. It's not like walking across the flat sidewalk. Do people trip when there's inclines in sidewalks? Of course they do. But this is, she was facing it straight on. She wasn't coming as counseling. You want to talk about whether there's fault. There is no fault. You're right. It's a no-fault system. It's a no-fault, but you keep implying that because she traversed this dip that there's an increased risk. There's no increased risk in that pavement. There's nothing shown. She couldn't testify as what caused her to fall. Is a person at greater risk traversing a dip in the pavement than they are traversing flat pavement? Depends on how you walk. It does. So in this particular case, she offered no evidence to show why that area is somehow inherently dangerous. As in the IIT case, they showed that it was a high-crime area. Was there any evidence to show that people were falling on this dip on a regular basis? She never encountered any problems before if she took that route before. She testified she was familiar with the area. She had walked that route before. Crate and barrel simply carved out their driveway and made it level with the street. That's not, to my opinion, by creating a drive for their service vehicles or their delivery vehicles. That doesn't create any difference. What did the sign say? The sign talks about the high curb where the alley is. No testimony was offered by petitioner to establish anything otherwise. It says, caution high curb. If you look at the photographs, that sign is adjacent to the high curb when you step in between the alleyways. Well, counsel, couldn't it be argued to be a matter of common sense? I mean, isn't it only common sense and logic that if you're traversing a straight, flat surface, you're less likely to stumble and fall than if you're traversing a surface with a dip? I mean, isn't that a matter of simple logic? Is one exactly the same as the other in terms of a propensity for stumbling? Well, the way I look at it is from, as you say, a common sense perspective. To answer your question, is there a difference between flat and a surface as is here where there's a drive? Yes, there is. Okay. Don't they still have to prove? Doesn't the claimant have the burden of proving that that was an increased risk by showing some type of dangerous condition? Is this dip that it's been called, is it nothing more than a surface drive where the pavement's not broken, there was no buckling, she simply stumbled upward? Are you talking about expert testimony, that they have to have an engineer come in or something? Well, I mean, if we're going to argue common sense now, the arbitrator found against her, the commission said the dip created an increased risk by just being a dip, whatever we're going to call this thing. But she still has to prove it. If we're going to say that that is not a normal sidewalk in the city of Chicago, which I beg to differ based on the size of the city, that exists all over this place. But here's what I think you're missing in the argument, and I tend to agree with what you're saying, believe it or not. But the point what the commission found was that you're right. Everybody walking around the city of Chicago may encounter dips occasionally. Okay? The general public does. But her employment required her to encounter this dip at a frequency much greater than the general public because she had to go out and make these deposits. Well, they say Petitioner regularly was required to traverse the streets in order to make deposits. Right. And was exposed to the risk of the dip in the driveway with greater frequency than the members of the general public. Precisely. How is that proven? It was her route. There's no other evidence that the general public was excluded from that area. I think what they're saying, or I mean just to put it very simply, is that most people walk to work around here, they walk home. During her work hours, in the course of, they're telling her she goes out to the street, she takes on then all the risk, the employer takes on all the risk too, of the street while she is doing, furthering the employer's business. I understand that. So I don't even care if there's a dip. I think under that doctrine, it could be the curb. It could be a crack in the sidewalk. It could be ice. Well, the problem I have with that, just for the sake of argument, if you open that door, there would be a flood of cases with every person that steps foot in Chicago. Counsel's alluded to it. Every time we make an argument, he talks about, well, you leave this door right now and you trip on the sidewalk, then you're excluded under work comp. Well, isn't that true for all of us? I mean, if I walk out here right now and decide to cut across the street and cut through the Thompson Center and I trip up a curb, is that compensable? Are you required to go to the Thompson Center on a regular basis? Yes, I am. It may very well be. We'll just leave that open for another day. Well, I do believe that, again, citing your argument and your special concurring opinion in Homer Dang, she still has to prove an increased risk. And the street risk doctrine that you allude to, I still think there has to be a risk associated with the place she is and that we directed her there. There was no direction for her to take that route. Thank you. Thank you. Dr. Rubato? This was the most direct route. The only other logical route would have been to go in the opposite direction first. Any other route would have been a detour. But more important to me. Does the route even matter? I agree, Judge. I agree. More important to me is I grant she needs to show a risk. I strenuously dispute that the case should be found compensable on the basis that she had to show and did show an increased risk, even though, under the cases that I've cited to you, she has. Why are you adamant against the fact that she might have to show an increased risk? Well, because I think that's going to create problems for the bar. I think it's a bad application of the facts of this case to the law. Well, that's what the commission found. No, they found that she, the risk, not the increased risk, was associated to her employment, and therefore rose out of it. But they then said respondent is demanding more. We declined to find that she needs to show an increased risk. But if we had to so find, she did because of the tenets of the cases I cited to you. And I want this court to reverse, respectfully speaking, and find that her being sent out on the street and encountering this risk made those activities, those activities were incidental to her employment, and therefore the case is compensable. I prefer not that you insist upon an increased risk for this street employee because I don't think it's required. And I'm fearful that if the holding goes in that direction, we're going to wind up, pardon me, with more cases that are all talking about you must show an increased risk for these activities, even though they're incidental to your employment, and we're going to wind up with my secretary here someday because someone says, well, we all lift boxes. What's your increased risk? I mean, we all traverse streets, but as we said in that research case, it's different. Anyone can traverse any street within the city boundaries of Chicago. But the way you want to go, let's say she's not on the street. She's just walking down the hall carrying a file. And if in that hallway, as in some of the older buildings when they try to attach two together, there's a dip, if she was walking down the sanitary, whatever this place is called, and there was a dip in the hallway and she stumbled forward as a result of it, I would maintain she doesn't need to show an increased risk to the general public, and it would almost seem absurd because the general public's not in the building. That's why I say it's really a red herring that she's out on the street when she gets this accident in some respects because we keep confusing. Well, let's say in your case, the general public doesn't, you would argue, the general public doesn't go down hallways that dip. I'm sorry, Judge. In your case, you would say the general public doesn't go down hallways that dip. Well, general public. But we know that the general public goes across that street and crosses that. Yes. Well, no. The people around that area go down that street. Let's remember Institute of Technical Research. Okay. So the people go, yeah, okay. And the fellow that gets shot there, the fellow that gets shot on the south side here, the defense was, well, it's a dangerous neighborhood. Anyone can be shot by a stray bullet. And the court said, that's not the test. We're not testing this man vis-a-vis other people in the neighborhood. That's the lion cage argument. We're testing this against the public at large. And he's in an area that's more dangerous. So he's established his increased risk, even though everyone else in that neighborhood is exposed to the same risk as he, just like anyone in the lion tamer's cage. So it's not, you're not comparing her against the other people that traverse this dip. You're comparing her against the public at large. And maybe where you live, Your Honor, you wouldn't in the space of a year come across a sidewalk that dipped as this one did. Well, I'll look at the pictures, but I'm pretty sure I walk a lot around the city, and they're there every other block, that same thing that you're going to show in those pictures. Well, this was enough where, as we said, there was also the sign about high court. And I see I'm starting to wear someone's patience. I'm going to excuse myself. Thank you. The court will take the matter under advisory for disposition.